UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETRA AURORA AGUILAR CALVILLO,<br><br>    Petitioner,<br><br>    v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>    Respondents. | No. 1:26-cv-00569-DC-CSK (HC)<br><br>ORDER GRANTING IN PART PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 2) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 2), filed in conjunction with her petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging her ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant in part Petitioner's motion for a temporary restraining order.

**BACKGROUND**

**A.    Factual Background**

Petitioner Petra Aurora Aguilar Calvillo is a native and citizen of Mexico.[1] (Doc. No. 1 at ¶ 2.) Petitioner entered the United States without inspection in October 2016. (*Id.*) Shortly after entering the United States, Petitioner was detained and then released on parole. (*Id.*) Since her

---

[1] Neither party attached immigration documents as exhibits to their briefing. Accordingly, all information regarding Petitioner's immigration status is taken from the factual allegations in her habeas petition. (Doc. No. 1.) Respondents do not dispute the accuracy of these allegations in their opposition. (Doc. No. 6.)

1  release, Petitioner alleges she has abided by all the terms of her parole and alleges that she has not
2  committed any violation of local, state, or federal law. (*Id.* at ¶¶ 3, 6.) Petitioner resides in
3  Corning, California, with her family, including her one-year-old son who has health issues that
4  require Petitioner's care. (*Id.* at ¶ 8.)

Petitioner filed an application for asylum, which was denied on January 21, 2022. (*Id.* at ¶ 7.) Petitioner appealed the denial of her asylum application, and that appeal remains pending. (*Id.*) Thus, Petitioner does not have a final order of removal. (*Id.*)

On September 3, 2025, Petitioner was re-detained by U.S. Immigration and Customs Enforcement ("ICE"). (*Id.* at ¶ 4.) Petitioner sought review of her detention in immigration court, but on January 13, 2026, an immigration judge denied her request for bond, claiming that the immigration court lacked jurisdiction to consider her request. (*Id.*) Petitioner remains detained in the California City Correctional Facility. (*Id.* ¶ 23.)

**B.     Procedural Background**

On January 23, 2026, Petitioner filed her habeas petition pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Petitioner asserts the following claims against respondents Christopher Chestnut, Todd M. Lyons, Kristi Noem, and Pamela Bondi: (1) violation of her right to substantive due process under the Fifth Amendment to the Constitution; (2) violation of her right to procedural due process under the Fifth Amendment to the Constitution; and (3) unlawful arrest in violation of the Fourth Amendment to the Constitution. (*Id.* at 11–14.) Petitioner seeks an order requiring Respondents to immediately release Petitioner and enjoining Respondents from re-detaining her unless her re-detention is ordered at a custody hearing before a neutral arbiter. (*Id.* at 14.) On that same day, Petitioner filed the pending motion for a temporary restraining order in which she seeks the same relief. (Doc. No. 2 at 16.)

On January 27, 2026, Respondents filed an opposition to Petitioner's motion for a temporary restraining order. (Doc. No. 6.) Later that same day, Petitioner filed a reply thereto. (Doc. No. 7.)

/////

/////

**DISCUSSION**

**A.      Likelihood of Success on the Merits**

Petitioner contends that her re-detention on September 3, 2025 violates her right to due process under the Fifth Amendment to the Constitution because she has a protected liberty interest in her continued freedom following her release on her own recognizance from immigration detention in 2016. (Doc. No. 2 at 8–12.) Petitioner further argues that, because Respondents did not provide Petitioner with a pre-deprivation hearing in front of a neutral adjudicator in which the government bears the burden of showing by clear and convincing evidence that Petitioner is a danger to the public or a flight risk, she is entitled to immediate release.[2] (*Id.* at 8.)

This issue is not new to this court, as it has previously found that where a noncitizen[3] not subject to a final removal order is released from immigration detention on their own recognizance, that noncitizen is both statutorily and constitutionally entitled to a pre-deprivation bond hearing in front of a neutral adjudicator. *See, e.g., Labrador-Prato v. Noem et al.*, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025); *Selis Tinoco v. Noem, et al.*, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025).[4] In both *Labrador-Prato* and *Selis Tinoco*, this court found that the government's failure to provide the petitioners with pre-deprivation bond hearings before their re-detention mandated the petitioners' immediate release. *Labrador-Prato*, 2025 WL 3458802 at *7; *Selis Tinoco*, 2025 WL 3567862 at *8. Thus, in its order setting a briefing schedule on the pending motion in this case, the court directed Respondents to "substantively address whether any provision of law or fact in this case would

---

[2] Although Petitioner did receive a bond hearing in front of an immigration judge on January 13, 2026, the immigration judge declined to consider Petitioner's claim, finding that the immigration court did not have jurisdiction to consider her request for custody redetermination. (Doc. No. 1 at ¶ 4.)

[3] This order uses the term "noncitizen" as equivalent to the statutory term "alien." *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020).

[4] The court hereby incorporates by reference its analysis of the government's constitutional and statutory obligations pertaining to re-detention of noncitizens in *Labrador-Prato* and *Selis Tinoco*.

1  distinguish it from this court's decision" in *Selis Tinoco v. Noem, et al.*, 1:25-cv-01762-DC-JDP,
2  2025 WL 3567862 (E.D. Cal. Dec. 14, 2025).[5] (Doc. No. 5.)

3        In their opposition, Respondents acknowledge that judges in the Eastern District of
4  California, including this court, "have granted [temporary restraining orders] like the one that
5  Petitioner requests" on the same basis as Petitioner requests a temporary restraining order here.
6  (Doc. No. 6 at 2 n.2.) However, Respondents contend that Petitioner's case is substantively
7  distinguishable from those cases because "Petitioner was taken into ICE custody after agents with
8  the United States Forest Service executed a federal search warrant at her residence in September
9  2025 and found ammunition and a high-capacity magazine ("contraband")[6] in the room that she
10 shared with another individual that she cannot lawfully possess due to her illegal status." (*Id.* at
11 1.) Respondents note that the "search warrant was for an alleged cultivation of marijuana on
12 public lands." (*Id.* at 1–2.) Accordingly, Respondents request that the court deny Petitioner's
13 motion for temporary restraining order.

14       In her reply, Petitioner does not dispute that her detention followed discovery of the
15 contraband pursuant to a lawfully executed search warrant, but she argues that Respondents "have
16 not explained how the weapon found in the house was related to [Petitioner] or whether
17 [Petitioner] was ever charged with a crime." (Doc. No. 7 at 8.) Accordingly, Petitioner argues,
18 "this is precisely why there is a bond hearing requirement" such that Petitioner can "present her
19 case" that the discovery of the contraband does not show she is a flight risk or a threat to safety.
20 (*Id.*)

21       The court agrees with Petitioner that she is entitled to a bond hearing where she can

---

[5] The court also directed Respondents to address another decision issued by this court, *D.L.C. v. Wofford, et al.*, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026). (Doc. No. 5.)

[6] In their opposition, Respondents allege that "ammunition and a high-capacity magazine" were found in Petitioner's room, but do not indicate that any firearm was located with that contraband. (Doc. No. 6 at 1.) In her reply, Petitioner refers to a "weapon" located during the search. (Doc. No. 7 at 8.) While the record is not clear as to whether a weapon was found, in either instance the contraband constitutes evidence that an immigration judge may consider in determining whether Petitioner's release on her own recognizance should be revoked. *See Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (stating that an immigration judge may consider "[a]ny evidence in the record that is probative and specific" when considering a request for custody redetermination).

1  present her defenses to Respondents' claim. While in their opposition Respondents present a

2  viable explanation for why circumstances have changed such that Petitioner's re-detention is now

3  justified, their argument is for an immigration judge, who must determine whether Respondents

4  meet their burden of showing that the alleged changed circumstances render Petitioner a flight

5  risk or a threat to public safety. *See Labrador-Prato*, 2025 WL 3458802 at *3 (citing *Jennings v.*

6  *Rodriguez*, 583 U.S. 281, 306 (2018)).

7  However, unlike *Labrador-Prato* and *Selis Tinoco*, Respondents have viably alleged that

8  Petitioner's re-detention was precipitated by a changed circumstance arguably indicating that

9  Petitioner is a threat to public safety. And, while Petitioner argues that evidence of the contraband

10  found in her home is insufficient to show that she is now a threat to safety because she was not

11  charged with a crime, an immigration judge may consider all evidence, not just criminal

12  convictions, when considering a noncitizen's request for custody redetermination. *Matter of*

13  *Guerra*, 24 I. & N. Dec. 37, 40 ("In the context of custody redeterminations, Immigration Judges

14  are not limited to considering *only* criminal convictions in assessing whether an alien is a danger

15  to the community. Any evidence in the record that is probative and specific can be considered.").

16  Thus, while the court finds that Petitioner is likely to succeed on the merits of her claim

17  that her re-detention without a bond hearing violated her right to due process, the court will order

18  that the proper remedy for this violation is that Petitioner receive a post-deprivation bond hearing

19  in which Respondents must show, by clear and convincing evidence, that the alleged changed

20  circumstances demonstrate that Petitioner is either a flight risk or threat to public safety, such that

21  her detention is justified. *See Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK,

22  2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (finding that where government's asserted

23  justifications for noncitizen's re-detention "are not obviously pretextual" and "there is a dispute

24  of fact as to whether Petitioner repeatedly violated the terms of his parole" the proper remedy is

25  "prompt, post-deprivation process" rather than immediate release); *O.A.C.S. v. Wofford*, No. 1:25-

26  cv-01652-DAD-CSK, 2025 WL 3485221, at *5 (E.D. Cal. Dec. 4, 2025) (finding that the

27  petitioner's dispute as to whether he violated the terms of his supervised release "does not

28  demonstrate that his detention was pretextual," and therefore he "is not entitled to immediate

release but is entitled to an in-custody bond hearing.").

**B.    Irreparable Harm**

It is well established that the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (*quoting* Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)); *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation.")

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.    Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [ ] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Petitioner has demonstrated that she is likely unlawfully detained in violation of her due process rights and is suffering irreparable harm as a result.

On the other hand, the burden on Respondents in providing Petitioner a post-detention

6

bond hearing is minimal. "[T]he only potential injury that the government faces is a 'short delay' in detaining Petitioner[ ] if it 'ultimately demonstrates to a neutral decisionmaker' that their detention is necessary to prevent flight or danger to the community." *Valencia Zapata*, 801 F. Supp. 3d 919, 941 (E.D. Cal. 2025) (quoting *Salcedo Aceros*, 2025 WL 2637503, at *14). Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating Petitioner's due process rights, which is the case here. *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) (finding "the INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Accordingly, the court finds that the balance of equities and public interest weigh in favor of injunctive relief and consequently, all four *Winter* factors weigh in favor of Petitioner.

**D.    Security**

Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). Neither party addresses the issue of security in their briefing.

The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632- RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

/////

/////

**CONCLUSION**

For the reasons explained above,

1. Petitioner Petra Aurora Aguilar Calvillo's motion for a temporary restraining order (Doc. No. 2) is GRANTED in part as follows:

   a. Respondents are ORDERED to provide Petitioner a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its implementing regulations within seven (7) days of the date of entry of this order;

   b. Within three days of the bond hearing, Respondents shall file a status report in this case confirming that Petitioner has been provided the bond hearing;

   c. If Respondents fail to provide Petitioner a bond hearing within seven days, Petitioner shall be immediately released from Respondents' custody on the same terms as her 2016 parole; and

   d. If the government seeks to re-detain Petitioner following her release, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered.

IT IS SO ORDERED.

Dated:   **January 30, 2026**

Dena Coggins
United States District Judge